AARON PERKINS AND OTHERS *v.* LYMAN GIBBS.

*Pleading.    Seizure of intoxicating liquor.*

An officer seizing intoxicating liquor under the search and seizure provisions of the law of 1852 to prevent traffic in it, is only bound, in keeping it, to use that care and diligence which prudent men use in the care of their own goods; and the use of such care is sufficiently alleged by an averment that they were kept in a safe, suitable and proper place.

An officer seizing liquor in pursuance of those provisions may take the cask containing it. That which justifies the seizure of the former will also warrant the taking of the latter.

A person who is not a regular officer may be specially authorized to serve a warrant of search issued in pursuance of the provisions of that law.

TRESPASS for that the defendant, with force and arms, seized, took and carried away forty-two and one-half gallons of alcohol and one cask, all of the value of seventy-five dollars, of the property, goods and chattles of the plaintiffs, and converted the same to his own use, &c.    The defendant plead several pleas, the fourth of which alleged, after the *actio non,* as follows :

"That three persons, to wit, Harvey W. Ellis, Daniel E. Gay and John H. Kimball, legal voters in said town of Stockbridge, on the 21st day of July, A. D. 1855, at said Stockbridge, did make complaint on oath to and before Milton E. Smith, Esq., a justice of the peace in and for said Windsor county, that they, the said Harvey, Daniel and John, had reason to believe, and did believe that intoxicating liquor was kept or deposited in or about the house or barn of Norman Durkee of said Stockbridge, and intended for sale contrary to the statute, which complaint was addressed to said Justice Smith, and was in all things in due form of law and thereafterwards on the same day the said Justice Smith issued his warrant in due form of law, directed to any sheriff or constable in the state, and for want of such officer seasonably to be had, to Lyman Gibbs, an indifferent person, and of the purport and to the effect following, to wit: 'Whereas, H. W. Ellis, Daniel E. Gay and John H. Kimball, legal voters in the town of Stockbridge and county of Windsor aforesaid, have this day by writing under oath exhibited to me, the subscribing authority, their complaint, that at Stockbridge aforesaid, on the 21st day of July, A. D. 1855, intox-

icating liquor is kept or deposited in or about the house or barn of Norman Durkee, of Stockbridge, in the county of Windsor, and intended for sale contrary to the force of the statute in such case made and provided, &c. These are therefore, by the authority of the state of Vermont, to command you to enter, in the day time only, into the said dwelling house and barn of said Norman Durkee, and there diligently search for said liquor, and if the same be found seize it according to law. Hereof fail not, but make service and return according to law,' which warrant bore date on the said 21st day of said July, and was signed by said Justice Smith. And the said Justice Smith then and there wrote upon said warrant in substance as follows: 'I hereby authorize Lyman Gibbs to serve and return this complaint and warrant,' and signed the same as justice of the peace, which said warrant was thereafterwards on the same day delivered to the said Gibbs, the defendant, the same being directed to him as an indifferent person, to be by him, the said Gibbs, duly executed and returned according to law and the command thereof, and the said Gibbs, indifferent person as aforesaid, and being thereunto lawfully authorized, did, by virtue of said warrant, at said Stockbridge, on the same day and in the day time, search the dwelling house of the said Norman Durkee, and found therein, and under circumstances warranting the belief that the same was intended for sale contrary to law, and seized the alcohol named in the plaintiffs' declaration, the same being intoxicating liquor, and the barrel or cask in the plaintiffs' declaration named, the said alcohol being then and there contained therein. And he, the said Gibbs, made return of said warrant with his doings thereon to said Justice Smith, on the same day, at said Stockbridge, and also then and there made further return to said Justice Smith that he had said barrel of intoxicating liquor in his keeping, subject to the final action of the court. And the said Gibbs says that he kept the said alcohol in a safe, suitable and proper place, to wit, the store of Messrs. I. J. Russ & Co., in said Stockbridge, and that before the final action of said Justice Smith in the premises, and while the proceedings were pending before him and the said alcohol and cask was lawfully held by said Gibbs, to wit, on the night of the 23d day of July, A. D. 1855, some persons unknown to the said Gibbs feloniously and burglariously broke and entered

the said store, and with an augur bored a hole in said barrel, and by that means stole said alcohol therefrom and spoiled the said barrel, without negligence, fault or want of proper care on the part of him, the said Gibbs, or any person or persons having charge of said store, and the said barrel remains at said store ready for the plaintiffs if they will receive the same."

To this and also to the other pleas the plaintiffs demurred. The county court, May Term, 1856,— UNDERWOOD, J., presiding,— overruled the demurrer and adjudged the pleas sufficient. Exceptions by the plaintiffs.

*E. Hutchinson,* for the plaintiffs.

We submit whether the defendant having all the powers of the sheriff and having the power of the county at his control, he was not bound to keep it at all events ; *Sawyer* v. *Middletown,* 10 Vt. 238.

Neither plea (each professing to answer the whole declaration,) sufficiently alleges any matter of justification as to the cask even if good as to the alcohol.

A still further and fatal objection to the attempted justification is the total *want of authority in the justice* to direct the search warrant in question to any one but a known public officer. And the want of authority appearing upon the face of the warrant, the defendant cannot justify under it.   Such is the well settled doctrine of the common law; 4 Burn's Jus. 122 ; 1 Swift's Dig. 495 ; *Sanfred* v. *Nichols,* 13 Mass. 289 ; *Commonwealth* v. *Foster et als.,* 1 Mass. 488 – 9, 490 – 1.

The statute under which the defendant justifies being in derogation of common right and specially prescribing the *mode* of its execution, *that mode* must be shown to have been strictly pursued or the statute is no justification.

*A. P. Hunton,* for the defendant.

The opinion of the court was delivered by

REDFIELD, CH. J.  We have no occasion to decide upon the validity of the pleas *seriatim* in this case.  If one plea is good it is sufficient, and as the fourth plea contains all which is found in

the preceding ones and something more, if this is bad, upon *its* merits so must the others be.

I. In regard to the fourth plea it is first objected that it should have contained an averment that the property was taken by over-whelming force as of the public enemy. But since the case of *Bridges* v. *Perry,* 14 Vt. 262, it is settled in this state that a sheriff is not necessarily liable for the loss of the property intrusted to his custody because he has the posse at his command. He is bound to the utmost care and diligence of prudent men in the case of their own goods, and that seems to be sufficiently alleged under the averment that he kept the goods in this case, " in a safe, suita-ble and proper place, to wit, the store of A. B. If this averment had been traversed the question whether the store was kept properly fastened would naturally have arisen. The defendant was no more bound to allege that the doors were fastened than that the shutters were, but in order to prove the averments he must have proved, no doubt, that both were, so that it seems to us the averment in regard to the mode of keeping is sufficient even if want of care would have made the officer a trespasser *ab initio,* which the authorities do not seem to justify ; *Stoughton* v. *Mott,* 25 Vt. 668. But in some form the officer would be liable for negligent keeping of goods whereby loss accrued to the general owner.

II. In regard to the cask we think a sufficient justification for taking the contents must also include the vessel of necessity. The owner, by putting it to this prohibited purpose, must be satisfied to have it share the fate of its contents. The statute could never have been intended to receive any other construction. The idea that an officer going to seize spirits kept for sale must go provided with casks, would certainly be attended with serious embarrassment, and is one which the statute does not seem to countenance.

III. The question in regard to the right of the justice to appoint a special officer to serve such a warrant is one of considerable practical importance. But the statute giving justices such power is very general; ch. 29, sec. 39, " Whenever it shall be made to appear to a justice that *any precept returnable to him* may fail of service" he may appoint a special officer to serve the same. There can be no doubt this is a precept of that character. And neither the provision of the act of 1852, that the warrant shall be directed

to a " sheriff or constable," or the form given in the subsequent act including only such officers, is at all inconsistent with the power of the justice to authorize some one to serve it by the usual indorsement. All precepts are addressed very much in this way. If it had been the purpose of the legislature to inhibit this mode of appointment in regard to this species of process, we should, we think, find something more specific in regard to it.

Judgment affirmed.